2007 VT 61

## Herbert Hall McAdams III and Letty McAdams v. Town of Barnard

[936 A.2d 1310]

No. 05-542

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed July 20, 2007

Motion for Reargument Denied August 30, 2007

*Karen McAndrew* and *Douglas D. Le Brun* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, and *Kent J. Rubens* of *Rieves, Rubens & Mayton* (of Counsel), West Memphis, Arkansas, for Plaintiffs-Appellants.

*Timothy M. Eustace* of *Stitzel, Page & Fletcher, P.C.*, Burlington, for Defendant-Appellee.

¶ 1. **Burgess, J.** Herbert and Letty McAdams ("landowners") brought this action in superior court against the Town of Barnard for declaratory judgment to quiet title to their land in Barnard. Landowners' motion for summary judgment was granted in part, providing them with a judgment order stating that "there are no known public roads, easements, rights-of-way or trails" (hereinafter "public road" or "road") on their property. To the extent landowners sought additional relief in the form of a judgment that no other public roads exist, the court granted the Town's motion to dismiss. Landowners appealed the judgment, believing a definitive statement that there are no public roads on their land is necessary to quiet title. We reverse and remand.

¶ 2. The facts are not in dispute. Landowners hold title to approximately 280 acres in Barnard ("the property"). In 2001, landowners sought to make improvements to the property. As part of this process, they requested that the Town discontinue an abandoned, dead-end road, Town Highway (TH) #15, that crossed the property. The Town conducted a discontinuance hearing pursuant to 19 V.S.A. § 709 (requiring notice and hearing to discontinue a road) and discontinued the portion of TH #15 crossing the property. Some time later, landowners were granted a building permit for their improvements, but a group of Town residents

appealed issuance of the permit. Landowners ultimately prevailed in obtaining the permit after they appealed to the Environmental Court. Landowners then filed suit in federal court against the residents who had opposed the permit, claiming that the residents had acted in concert with state actors to deprive landowners of the permit in violation of their constitutional rights to due process and equal protection. The Town itself was not named as a defendant in that suit.

¶ 3. In 2003, the Town produced a set of maps depicting all parcels of land and known public highways and rights-of-way within the Town. The Town's maps indicated another public road, "Dean Road," crossed a portion of the property. There was also reference in Town records to another road of undetermined location, known as the "page 4 survey road" or "Fairbanks Road" that possibly affected landowners' title. Landowners thereafter filed the present suit against the Town to determine whether any valid town highways or rights-of-way existed on the property.

¶ 4. In August 2004, the Town and landowners entered into a mediation agreement in the present case. The Town agreed to initiate § 709 proceedings to discontinue Dean Road and Fairbanks Road. The Town also agreed to admit that it was not aware of any other roads or rights-of-way and that it claimed no interest in any roads or rights-of-way on the property. The agreement provided that, when these tasks were completed, landowners could move for summary judgment, with the Town reserving its right to respond to such a motion. In November 2004, the Town initiated proceedings to discontinue the two roads.

¶ 5. Meanwhile, in the federal suit, landowners moved to amend their complaint to add the Town as a defendant. Prior to a ruling on that motion, a mediation session was held in January 2005. At the mediation session, all parties to the federal suit and the Town entered into a Memorandum of Settlement that provided in pertinent part:

> 3. The Town of Barnard agrees, subject to formal Selectboard approval, that it will promptly take all appropriate legal steps to discontinue any known or claimed town roads or highways that traverse or lie within the McAdams' property, including taking all steps necessary to ratify its prior action in discontinuing TH 15. Warnings to accomplish the foregoing shall be published no

later than 30 days after the signing of this Agreement, and the action shall proceed with all deliberate speed.

4. The Town agrees that if any other roads on the McAdams' property not presently known, become know[n], the Town will at that time take all appropriate steps to initiate discontinuance proceedings with respect to such newly-discovered ancient roads.

5. The defendants, as individuals and in their official capacities, agree that they will not appeal or interpose any objection to the Town's actions in discontinuing the roads as stated in Paragraphs 3 [and] 4.

6. The parties will exchange releases with respect to all claims, including but not limited to all claims for costs and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988, and settlement consideration at such times as the steps taken in Paragraph 3 have been accomplished and court orders have been entered on the settlement agreements in both the pending state and federal cases, and the actions have been dismissed, with prejudice.

The Town completed discontinuance of all three known roads,[1] and subsequently requested landowners to stipulate to dismissal of the state court action pursuant to the federal mediation agreement. Landowners refused to agree to dismissal, maintaining that they were entitled to move for summary judgment on their claim for declaratory judgment pursuant to the state mediation agreement. Landowners subsequently filed a motion for summary judgment on June 20, 2005. At a hearing in superior court to discuss the proposed stipulated dismissal and landowners' objections to it, the court indicated that it would wait for a formal motion to dismiss from the Town and rule on both motions together.

¶ 6. In support of dismissal, the Town argued first that it had complied with the federal settlement agreement and the case should be dismissed on that basis. The Town further argued that the case had become moot when all known roads over the property were discontinued and that the court was without authority to declare any remaining, unknown roads to be nonex-

---

[1] In addition to Dean Road and Fairbanks Road, the Town renewed its discontinuance of TH #15 because of concern as to whether the Town followed the correct process to discontinue TH #15 in 2001.

istent when the statute provided only for discontinuance by town selectboards. Landowners took the position that the federal court settlement agreement did not supersede the state settlement agreement's provision that the state case would be decided on summary judgment. At most, said landowners, the federal court agreement was ambiguous and other evidence pointed to their intent that the state case not be dismissed. In response to the Town's mootness argument, landowners maintained that a quiet title action is not moot until all of a party's claims to a property are resolved, and that had not yet happened because there still existed the possibility that the Town could, at some later time, claim some newly discovered right-of-way across the property. Landowners further maintained that it was within the court's equitable power to declare the existence or nonexistence of roads, the statutory provisions for discontinuance notwithstanding.

¶ 7. The lower court's decision adopted all of the Town's arguments and concluded that landowners were not entitled to the judgment they sought for three reasons. First, the court said, the undisputed facts supported only a conclusion that there were no known public roads on the property, not that there were no public roads at all. Second, the court lacked authority to declare the nonexistence of any public roads because roads may only be discontinued in accordance with a statutory procedure. Finally, the Town was entitled to dismissal based on the federal settlement agreement.

¶ 8. On appeal, neither party briefed dismissal pursuant to the federal settlement agreement, focusing instead on the superior court's authority for declaring the nonexistence of any roads on a property and whether there was an actual case or controversy remaining. Arguments not briefed are waived. *Bigelow v. Dep't of Taxes*, 163 Vt. 33, 37-38, 652 A.2d 985, 988 (1994). We therefore move to the issues of mootness and the court's authority to declare the nonexistence of roads.[2]

---

[2] There is support for the proposition that the federal court settlement agreement does not require dismissal in any event. Paragraph 6 of the federal court settlement appears to contemplate further court orders in the pending state case. In light of the prior state settlement that had explicitly contemplated landowners' moving for summary judgment, the federal court agreement could be interpreted as allowing for landowners' motion for summary judgment and not necessitating dismissal.

■ ¶ 9. Landowners brought this suit as a declaratory judgment action to quiet title. Declaratory judgment is appropriate when a judgment "will terminate the controversy or remove an uncertainty." 12 V.S.A. § 4715. This controversy must involve the threat of actual injury to a party's protected interest. *Doria v. Univ. of Vt.*, 156 Vt. 114, 117, 589 A.2d 317, 318 (1991). Otherwise, "a declaratory judgment is merely an advisory opinion which [courts] lack the constitutional authority to render." *Id.* The Town does not dispute that the two claimed public rights-of-way provided a sufficient controversy to give the court jurisdiction at the time that landowners filed suit. The Town claims that by discontinuing the two known roads, any threat of actual injury to landowners ended, and consequently, jurisdiction was extinguished.

■ ¶ 10. Accepting the Town's position would allow quiet title defendants to escape final resolution of all potential disputes by taking each claim piecemeal. An adjudication that a right-of-way does not exist in one place on a property would not preclude subsequent litigation as to whether a right-of-way exists in another place on the same property. Some jurisdictions have taken a more economizing approach that provides for all potential disagreements to be adjudicated at one time: "The object of the [quiet title] action is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to." *W. Aggregates, Inc. v. County of Yuba*, 130 Cal. Rptr. 2d 436, 456 (Ct. App. 2002) (quotations omitted) (affirming finding that historic public road existed on plaintiff's property). A conflicting claim need not be active at the time of adjudication:

> [W]here a person is seized and possessed of a legal estate or interest and is unable to obtain an adequate legal relief against an invalid adverse title or right therein apparently arising under a deed, instrument or proceeding relating to real estate so that such deed, instrument, or proceeding may injuriously or vexatiously affect or embarrass the owner's title, or render precarious or doubtful his ability to produce existing extrinsic proof *when, in the future, the adverse claimant would seek to enforce the adverse title or right which is being held in abeyance*, the owner's privilege to have recourse to equity to have the cloud in his title or interest removed is unquestioned . . . .

*Homewood Realty Corp. v. Safe Deposit & Trust Co. of Baltimore,* 154 A. 58, 64 (Md. 1931) (emphasis added) (affirming adjudication in quiet title action of defendant's use of plaintiff's air space for opening and closing shutters when plaintiff was otherwise without remedy to clear title). Thus, while there must be a threat of actual defect to a landowner's title for a case or controversy to exist, the threat can extend to claims that are not actively being pursued.

¶ 11. In this case, landowners filed suit after three roads had been identified on the property, at least two of which were legal rights-of-way claimed by the Town. The existence of these roads gave rise to a threat of actual defect in title and, thus, a justiciable case or controversy. Resolution of the title dispute should then include all potential claims, to resolve once and for all, as between the parties, the title to the subject land.[3] Accordingly, we agree with landowners that when a party has claimed the existence of a right-of-way, a judgment expressing whether there are or are not any existing rights-of-way is ordinarily appropriate. However, this case is complicated by the fact that the party that claimed a right-of-way is a municipality. We next consider the effect of such a judgment in light of the statutory framework for discontinuing public roads.

¶ 12. The Town argues that courts are without authority to declare the nonexistence of public rights-of-way when discontinuance of a public road may only be performed in accordance with statutory procedures. Before discontinuing a road, the town's selectboard must give public notice, examine the premises, and hold a hearing. 19 V.S.A. § 709. Failure to comply with these procedures will render any purported discontinuance void. *In re Bill,* 168 Vt. 439, 442-45, 724 A.2d 444, 446-48 (1998) (finding road was not discontinued when selectboard failed to comply with then-applicable procedure for discontinuance); *Capital Candy Co. v. Savard,* 135 Vt. 14, 16-17, 369 A.2d 1363, 1365-66 (1976) (holding that mere abandonment does not constitute discontinuance because statutory procedure for discontinuance has not been followed). While the Town is correct that a selectboard must follow

---

[3] Because res judicata bars only relitigation of claims between the same parties or parties in privity, *In re St. Mary's Church Cell Tower,* 2006 VT 103, ¶ 3, 180 Vt. 638, 910 A.2d 925 (mem.), this would not preclude claims by neighboring landowners to a private right-of-way over former public roads to the extent such claims are available under 19 V.S.A. § 717(c) (Cum. Supp. 2006).

statutory procedures to validly discontinue a road, this does not preclude adjudication of the issue of whether there are any existing public roads on a property.

¶ 13. Determining whether any public roads exist is not the same as a discontinuance. Discontinuance is performed to extinguish a known road. Here, the court is being asked to determine simply whether any roads exist.[4] The Town argues that a declaratory judgment "would effectively 'discontinue' any and all currently unknown, but subsequently discovered, town highways across [the property]." Implicit in this argument is the Town's belief that it is impossible for the parties and, consequently, the court to determine with absolute certainty whether any additional roads exist over the property.[5] The difficulty in determining whether abandoned roads still legally exist stems from inconsistent, and sometimes incomprehensible, town records dating back two centuries or more. See generally P. Gillies, *Sleeping Roads*, Vt. Bar J., Spring 2004, at 14-16. However, these difficulties should not preclude judgment in landowners' favor where the burden was on the Town to prove any right it had to the property. *Beulah Hoagland Appleton Qualified Personal Residence Trust v. Emmet County Road Comm'n*, 600 N.W.2d 698, 700 (Mich. Ct. App. 1999) ("In an action to quiet title, the plaintiffs have the burden of proof and must make out a prima facie case of title. If the plaintiffs make out a prima facie case, the defendants then have the burden of proving superior right or title in themselves."

---

[4] A recent amendment to 19 V.S.A. § 717 implicitly acknowledges court authority to adjudicate the existence of roads. 2005, No. 178 (Adj. Sess.), § 4. That section now provides for a "presumption of discontinuance" when a road has not been maintained by the municipality for thirty years. 19 V.S.A. § 717(b). This presumption is rebuttable by evidence of the municipality's intent to continue the road as a public right-of-way. *Id.* A dispute as to the applicability of § 717(b) would apparently require court adjudication of whether the road is or is not presumptively discontinued, based on evidence of maintenance and intent.

[5] The conundrum of known unknown roads brings to mind one of former Secretary of Defense Donald Rumsfeld's famous existential musings: "As we know, there are known knowns. There are things we know we know. We also know there are known unknowns. That is to say we know there are some things we do not know. But there are also unknown unknowns, the ones we don't know we don't know." D. Sevastopulo, *Bush's Poet-in-Residence Rides Away to Find Montana*, Financial Times, Nov. 11, 2006, at 3, available at 2006 WLNR 19711333. Unaddressed by Mr. Rumsfeld's remarks is a potential fourth category, unknown knowns: things we do not know that we know.

(citation omitted)). The burden was thus fairly placed on the Town to review its own records and discern whether any roads existed. That the Town might be barred in the future from asserting a right-of-way based on a newly discovered, but now unknown, road is not a "discontinuance" as contemplated by § 709, but is a function of res judicata or collateral estoppel precluding successive litigation over matters that the Town could have raised in the instant case. See *In re St. Mary's Church Cell Tower*, 2006 VT 103, ¶¶ 3, 12, 180 Vt. 638, 910 A.2d 925 (mem.) (barring litigation of a claim that was or could have been fully litigated in prior proceeding); *Scott v. City of Newport*, 2004 VT 64, ¶ 8, 177 Vt. 491, 857 A.2d 317 (mem.) (listing as a criterion of collateral estoppel that there was a "full and fair opportunity to litigate the issue" previously).

■ ¶ 14. We emphasize that landowners may attain the remedy sought in this case only because abandoned, but legally existing, roads had been identified by the Town and still existed at the time suit was filed. These circumstances gave rise to a threat of actual defect in title from both identified and unidentified dormant roads and, thus, a justiciable case or controversy.

*Reversed and remanded for determination of the existence of any public roads on plaintiffs' property.*